UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME W. DEWALD, for himself | |
| Plaintiff, | NO: **23 CV 7833** |
| -against- | |
| DONALD J. TRUMP, | **COMPLAINT** |
| NY SECRETARY OF STATE, | |
| ROBERT J. RODRIGUEZ, in his official capacity as NY Secretary of State, | |
| RUDY GIULIANI, | |
| MARK MEADOWS, | |
| SIDNEY POWELL, | |
| JOHN EASTMAN, | |
| KENNETH CHESEBRO, | |
| JENNA ELLIS, | |
| RAY SMITH, | |
| JEFFREY CLARK, | |
| MICHAEL ROMAN, | |
| MISTY HAMPTON, | |
| ROBERT CHEELEY, | |
| SCOTT HALL, | |
| STEPHEN LEE, | |
| TREVIAN KUTTI, | |
| DAVID SHAFER, | |
| SHAWN STILL, and | |
| CATHY LATHAM. | |
| Defendants. | |

## NATURE OF THE ACTION

This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration from this Court regarding the eligibility of the Defendant, DONALD J. TRUMP, to participate in the upcoming New York State Republican Party Primary scheduled for the spring of 2024 and his standing to hold the office of President of the United States, as well as a declaration regarding the eligibility of the additional co-defendants, RUDY GIULIANI, MARK MEADOWS, SIDNEY POWELL, JOHN EASTMAN, KENNETH CHESEBRO, JENNA ELLIS, RAY SMITH, JEFFREY CLARK, MICHAEL ROMAN, MISTY HAMPTON, ROBERT CHEELEY, SCOTT HALL, STEPHEN LEE, TREVIAN KUTTI, DAVID SHAFER, SHAWN STILL, and CATHY LATHAM to participate in the same primary election or hold any office federal or in the State of New York, and restraining and enjoining the NY SECRETARY OF STATE and Robert J. Rodriquez in his official capacity of NY Secretary of State from certifying any of these named defendants from appearing on any ballot in the State of New York.

## JURISDICTION

1. This action is properly before the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK pursuant to 28 U.S.C. § 1331, as it presents federal constitutional questions arising under the United States Constitution.

2. This Court possesses subject matter jurisdiction over the instant action due to the substantial federal constitutional issues at stake. The issues raised involve the interpretation and application of Article 14, Section 3 of the United States Constitution, a pivotal provision that pertains to the eligibility of individuals to hold public office under both federal and state government and their respective jurisdictions.

3.   The controversy in question stems from alleged violations of federal constitutional
     prohibitions, specifically the engagement in insurrection against the United States
     government, as defined by Article 14, Section 3. Given the gravity of these allegations
     and the constitutional implications therein, federal subject matter jurisdiction is clear
     and compelling.

4.   The authority of this Court to adjudicate claims arising from alleged violations of the
     United States Constitution is well-established. As a federal district court within the
     United States judiciary, this Court is vested with the responsibility to interpret and
     enforce the Constitution and its provisions.

5.   Furthermore, the Defendants' actions, as detailed within this complaint, give rise to
     substantial federal questions that require adjudication by this federal court. Their
     involvement in activities with broad implications for the constitutional fabric of the
     United States warrants a forum equipped to address and resolve intricate constitutional
     matters.

6.   The importance of uniform application and interpretation of the United States
     Constitution necessitates the jurisdiction of a federal court, ensuring that these
     consequential matters are resolved consistently and in accordance with established
     legal principles.

7.   In light of the above, the jurisdiction of the UNITED STATES DISTRICT COURT FOR
     THE SOUTHERN DISTRICT OF NEW YORK is the only jurisdiction that can
     address the complex and significant issues presented within this complaint. Therefore,
     this action is brought in the UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK under 28 U.S.C. § 1331, as the issues presented involve unique federal constitutional questions.

## VENUE

8. Venue is properly laid in the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK pursuant to 28 U.S.C. § 1391(b). The events giving rise to this action have a substantial connection to this District, and thus, it is an appropriate forum for the resolution of the issues presented.

9. The primary basis for venue in this District is the occurrence of crucial events related to the Defendants' alleged violations of federal constitutional provisions. These events include the coordination and execution of the Fake Electors Scheme, as well as the subsequent insurrectionary activities, which occurred within the jurisdiction of this District.

10. Additionally, the Defendants' actions, as detailed in this complaint, have had a substantial impact within the Southern District of New York. The dissemination of false narratives, the filing of legal actions, and the engagement in public events that contributed to the erosion of trust in the electoral process and culminated in the events of January 6, 2021, reverberated throughout this District.

11. This District is also geographically linked to the broader context of the Defendants' alleged violations of Article 14, Section 3 of the United States Constitution. As a significant epicenter of legal and political discourse, the Southern District of New York is well-equipped to address the constitutional issues at the heart of this action.

12. Given the widespread national implications of the matters presented in this complaint, the Southern District of New York serves as a suitable venue to ensure comprehensive examination, interpretation, and adjudication of the complex legal issues arising from the Defendants' conduct.

13. Thus, venue in the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK is proper and consistent with the statutory and constitutional requirements governing the determination of venue in federal civil actions.

## THE PARTIES

14. Plaintiff, JEROME W. DEWALD, is a legal resident of the state of New York and a U.S. citizen by birth. He is a registered Republican voter in the state of New York, a resident of the New York City Borough of Manhattan and is a member of the New York City Bar Association. Plaintiff is a pro se practitioner in the state courts in New York and Michigan, as well as the federal courts in New York, Michigan, and Nevada. Plaintiff is also the founder of Pro Se Pro (https://pro-se.pro/), a website dedicated to empowering individuals with tools and knowledge for legal self-representation using artificial intelligence.[1]

15. Defendants, DONALD J. TRUMP, RUDY GIULIANI, MARK MEADOWS, SIDNEY POWELL, JOHN EASTMAN, KENNETH CHEELEY, JENNA ELLIS, RAY SMITH, JEFFREY CLARK, MICHAEL ROMAN, MISTY HAMPTON, ROBERT CHEELEY, SCOTT HALL, STEPHEN LEE, TREVIAN KUTTI, DAVID SHAFER,

---

[1] Pro Se Pro harnesses the power of specially-trained AI Large-Language Models to talk to a *pro se* through the process of self-representation, including understanding when the assistance of a legal professional is crucial and when it is not.

SHAWN STILL, and CATHY LATHAM are individuals who have been publicly associated with various legal and political actions related to the 2020 Presidential Election and its aftermath.

16. Defendant the NY SECRETARY OF STATE has the primary responsibilities certifying the names of candidates who meet the necessary eligibility criteria to appear on ballots. This includes both city-wide and county-wide elections, as well as state-level primary elections. The Secretary of State's office plays a pivotal role in maintaining the integrity of elections by meticulously reviewing candidate information and conducting due diligence to ensure that only eligible individuals are allowed to run for office.

17. Defendant Robert J. Rodriguez is the NY Secretary of State. In his official capacity, Defendant Rodriguez is responsible for overseeing elections and certifying candidates for statewide offices, including ensuring compliance with all applicable laws and regulations.

18.

19. Defendant Rudy Giuliani ("Defendant Giuliani") is a former federal prosecutor and the former Mayor of New York. He served as one of Defendant Trump's personal lawyers and played a significant role in the efforts to overturn the results of the 2020 Presidential Election. Giuliani has been charged with various offenses, including violations of the Georgia RICO act, solicitation of violation of oath by a public officer, false statements and writings, conspiracy to commit impersonating a public officer, and conspiracy to commit forgery, among others.

20. Defendant Mark Meadows ("Defendant Meadows") served as the White House Chief of Staff during Defendant Trump's presidency. He was closely aligned with Defendant Trump and played a role in the events leading up to and following the 2020 Presidential Election. Meadows faces charges including violation of the Georgia RICO act and solicitation of violation of oath by a public officer.

21. Defendant Sidney Powell served as a prominent member of former President Trump's legal team following his loss in the 2020 presidential election. She actively pursued numerous lawsuits on behalf of Trump, alleging widespread voter fraud and corruption. Powell is a well-known attorney with a background in high-profile legal cases. She became a key figure in post-election legal efforts to challenge the 2020 election results.

22. Defendant John Eastman held the position of former acting assistant attorney general at the U.S. Department of Justice (DOJ). He played a significant role in advising and assisting former President Trump in efforts to challenge the outcome of the 2020 election. Eastman, prior to his involvement in the 2020 election controversy, was recognized as a prominent figure in conservative legal circles. He was notably involved in the Federalist Society and became known for his role in advising Trump during the final days of his presidency.

23. Defendant Kenneth Chesebro - Trump attorney involved in promoting the fake electors scheme.

24. Defendant Jenna Ellis - Former Trump attorney who worked on election-related legal challenges.

25.  Defendant Ray Smith - Former Trump 2020 campaign attorney in Georgia who testified at state Senate hearings.

26.  Defendant Jeffrey Clark - Former acting assistant attorney general at the DOJ, accused of trying to overturn the election.

27.  Defendant Michael Roman - Senior Trump campaign staffer involved in coordinating election-related efforts.

28.  Defendant Misty Hampton - Former Coffee County, Georgia, election supervisor.

29.  Defendant Robert Cheeley - Local lawyer who represented Trump and made false election allegations.

30.  Defendant Scott Hall - Atlanta-based Trump supporter and bail bondsman.

31.  Defendant Stephen Lee - Illinois pastor and Trump supporter.

32.  Defendant Harrison Floyd - Former leader of Black Voters for Trump.

33.  Defendant Trevian Kutti - Trump supporter and former publicist for celebrities.

34.  Defendant David Shafer - Georgia false elector and former chair of the state's Republican Party.

35.  Defendant Shawn Still - False elector and Georgia state senator.

36.  Defendant Cathy Latham - False elector and former head of the Coffee County Republicans.

## **FACTUAL BACKGROUND**

37.  The facts in this case are straightforward and undeniable. Donald J. Trump served as the

45th President of the United States, securing victory in the 2016 election and assuming

office on January 20, 2017. His tenure lasted four years until his defeat in the 2020

Presidential Election, when Joseph R. Biden, Jr. was inaugurated as President on January

20, 2021. Notably, President Trump chose not to attend the inauguration of his successor

and departed for his South Florida estate during the ceremony.

38.   On January 6, 2021, President Trump addressed a crowd on the Ellipse near the Capitol. In

his speech, he urged the throng to march to the Capitol, declaring his intention to join

them. After concluding his address, Trump returned to the White House, where he

watched the subsequent events unfold on television. As we are well aware, the crowd

proceeded to march on the Capitol, forcibly entering the building, desecrating the

rotunda, and gaining access to the offices of representatives and senators.

Simultaneously, the House of Representatives was in the process of confirming the

election results. Alarms rang out, and members of Congress sought refuge in secure

tunnels and rooms beneath the Capitol. Notably, Vice President Mike Pence narrowly

avoided contact with some of the throng as he made his way to a secure area. Ultimately,

several high-ranking government officials were relocated to a safe area at Fort McNair in

SW Washington.

39.   It is worth highlighting that President Trump had issued a tweet the day before, foreboding

that "January 6th will be wild." Subsequently, he made remarks affirming the special

status of the insurrectionists who breached the Capitol, stating, "we love you." He also

insinuated that had Vice President Pence refused to certify the election results, all would

have been well. It was not until several hours had passed that the National Guard was

deployed to quell the insurrection. There were allegations that President Trump resisted

the deployment, engrossed by the televised events unfolding at the White House.

40. In the aftermath of January 6th, numerous insurrectionists faced charges ranging from minor offenses to assault and battery against Capitol police officers. Tragically, lives were lost during the chaos.

41. More recently, Special Counsel Jack Smith, appointed by the U.S. Attorney General, submitted his findings regarding the events of January 6th to a grand jury in D.C. The grand jury returned indictments against President Trump, including charges of insurrection against the U.S. federal government. President Trump has been arraigned on these charges and awaits trial, expected sometime in 2024 or possibly 2025.

42. It is important to note, albeit briefly, that President Trump also faces formal indictments for holding top-secret documents at his Palm Beach, Florida residence, constituting a federal offense. Additionally, he has been indicted by the City of Manhattan and the State of Georgia for other election-related crimes. However, these charges do not preclude his potential candidacy for reelection in November 2024.

43. In addition to their efforts to challenge the election results through litigation and public statements, the Defendants devised and executed a coordinated scheme to undermine the integrity of the presidential election by promoting and implementing an illegitimate and fraudulent alternative set of electors (the "Fake Electors Scheme"). This scheme aimed to present a false narrative that an alternate slate of electors, loyal to President Trump, had been duly elected and qualified in several key states, including Georgia.

44. Defendants leveraged their respective roles, networks, and positions to orchestrate the Fake Electors Scheme. This scheme involved several components, including the fabrication of fake electors, submission of counterfeit electoral certifications, and dissemination of

false narratives to the public and government officials.

45.   Defendants David Shafer and Shawn Still, among others, played pivotal roles in organizing and endorsing the slate of purported "fake electors." As former high-ranking members of the Republican Party in Georgia, they utilized their positions to lend credibility to this fabricated alternate electoral slate.

46.   Defendant Robert Cheeley, a local lawyer with a history of affiliations with conservative political groups, actively represented the Fake Electors in legal proceedings, even while aware of the baseless nature of their claims. This included filing frivolous lawsuits and making false allegations about widespread voter fraud.

47.   Defendants Scott Hall and Trevian Kutti, known Trump supporters with access to various Trump campaign networks, contributed to the scheme by attempting to intimidate legitimate election officials and spread misinformation about the legitimacy of the election results.

48.   Defendants Stephen Lee and Harrison Floyd, both vocal Trump supporters, played a role in the scheme by reaching out to election workers and witnesses to exert pressure and extract false statements, contributing to the atmosphere of misinformation and coercion.

49.   Defendants Kenneth Chesebro, Jenna Ellis, and John Eastman, Trump attorneys, actively provided legal cover and justification for the Fake Electors Scheme. They assisted in drafting legal documents that sought to present the fraudulent slate of electors as genuine and participated in public events aimed at promoting the scheme.

50.   Defendants Ray Smith, Jeffrey Clark, and Michael Roman used their roles and positions to amplify the baseless claims of election fraud that underpinned the Fake Electors Scheme.

They participated in public events, media appearances, and legal proceedings designed to challenge the legitimacy of the election results.

51.   Defendants Misty Hampton, a former election supervisor, and Cathy Latham, a former head of the Coffee County Republicans, were directly implicated in efforts to tamper with voting data and engage in unauthorized actions to further the scheme's objectives.

52.   This coordinated and multifaceted effort to establish a parallel, false narrative of electors' selection, certification, and endorsement by influential individuals further exacerbated public confusion, eroded trust in the electoral process, and contributed to the environment that culminated in the events of January 6, 2021.

53.   In addition to their efforts to challenge the election results through litigation and public statements, the Defendants devised and executed a coordinated scheme to undermine the integrity of the presidential election by promoting and implementing an illegitimate and fraudulent alternative set of electors, known as the 'Fake Electors Scheme.' This scheme aimed to present a false narrative that an alternate slate of electors, loyal to President Trump, had been duly elected and qualified in several key states, including Georgia. The Defendants leveraged their roles, networks, and positions to orchestrate this scheme, involving the fabrication of fake electors, submission of counterfeit electoral certifications, and dissemination of false narratives to the public and government officials.

54.   Defendant Robert Cheeley ("Defendant Cheeley"), a local lawyer with affiliations to conservative political groups, actively represented the Fake Electors in legal proceedings, even while aware of the baseless nature of their claims. This included filing frivolous lawsuits, making false allegations about widespread voter fraud, and attending

public events designed to give the scheme undue attention.

55.   Defendants Scott Hall ("Defendant Hall") and Trevian Kutti ("Defendant Kutti"), both

known Trump supporters with access to various Trump campaign networks, contributed

to the scheme by attempting to intimidate legitimate election officials, spread

misinformation about the legitimacy of the election results, and improperly access voting

data.

56.   Defendants Stephen Lee ("Defendant Lee") and Harrison Floyd ("Defendant Floyd"), both

vocal Trump supporters, actively reached out to election workers and witnesses to exert

pressure, extract false statements, and contribute to the atmosphere of misinformation

and coercion that surrounded the Fake Electors Scheme.

57.   Defendants Kenneth Chesebro ("Defendant Chesebro"), Jenna Ellis ("Defendant Ellis"),

and John Eastman ("Defendant Eastman"), Trump attorneys, provided legal cover and

justification for the Fake Electors Scheme. They assisted in drafting legal documents that

sought to present the fraudulent slate of electors as genuine, participated in public events

aimed at promoting the scheme, and lent their professional credibility to further the false

narrative.

58.   Defendants Ray Smith ("Defendant Smith"), Jeffrey Clark ("Defendant Clark"), and

Michael Roman ("Defendant Roman") used their roles and positions to amplify the

baseless claims of election fraud that underpinned the Fake Electors Scheme. They

participated in public events, media appearances, and legal proceedings designed to

challenge the legitimacy of the election results, often making false statements and

accusations in the process.

59.   Defendants Misty Hampton ("Defendant Hampton"), a former election supervisor, and

Cathy Latham ("Defendant Latham"), a former head of the Coffee County Republicans, were directly implicated in efforts to tamper with voting data, engage in unauthorized actions, and manipulate the election process to further the scheme's objectives.

60. This coordinated and multifaceted effort to establish a parallel, false narrative of electors' selection, certification, and endorsement by influential individuals further exacerbated public confusion, eroded trust in the electoral process, and contributed to the environment that culminated in the events of January 6, 2021.

### ARTICLE 14, SECTION 3 OF THE US CONSTITUTION

61. Article 14, Section 3 of the United States Constitution, known as the 'Engagement in Insurrection Clause,' is a crucial safeguard for the foundations of democratic governance and the rule of law. This constitutional provision unequivocally stipulates that 'No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State,' if they have previously taken an oath to support the Constitution and subsequently engaged in insurrection or rebellion against it, or provided aid or comfort to its enemies. This clause's intention is clear: to protect the stability and integrity of the nation's governance. By orchestrating and promoting the Fake Electors Scheme to undermine the presidential election process, the Defendants' actions directly contributed to an environment of confusion and distrust, culminating in the January 6, 2021 attack on the United States Capitol. This coordinated effort to establish a false narrative of electors' selection, certification, and endorsement amounted to a clear attempt to disrupt the certification of the presidential election results.

62.  63. Article 14, Section 3 of the United States Constitution, known as the 'Engagement in
      Insurrection Clause,' is a crucial safeguard for the foundations of democratic governance
      and the rule of law. This constitutional provision unequivocally stipulates that 'No person
      shall be a Senator or Representative in Congress, or elector of President and Vice
      President, or hold any office, civil or military, under the United States, or under any
      State,' if they have previously taken an oath to support the Constitution and subsequently
      engaged in insurrection or rebellion against it, or provided aid or comfort to its enemies.

63.  This clause's intention is clear: to protect the stability and integrity of the nation's
      governance. By orchestrating and promoting the Fake Electors Scheme to undermine the
      presidential election process, the Defendants' actions directly contributed to an
      environment of confusion and distrust, culminating in the January 6, 2021 attack on the
      United States Capitol. This coordinated effort to establish a false narrative of electors'
      selection, certification, and endorsement amounted to a clear attempt to disrupt the
      certification of the presidential election results.

64.  In accordance with the clause's intent to safeguard the stability and integrity of the nation's
      governance, it is imperative that the court recognizes the Defendants' violation of Article
      14, Section 3. Consequently, the court should declare that the Defendants are ineligible
      to hold any office, whether at the local, state, or federal level, as their actions constitute
      direct engagement in insurrection against the United States government.

65.  The Defendants, prominent political figures, legal professionals, and campaign strategists,
      actively participated in promoting and executing a scheme to undermine the legitimacy
      of the presidential election through the Fake Electors Scheme. Their actions,
      characterized by coordinated efforts to present a false narrative of electors' selection,

certification, and endorsement, directly contributed to an environment of distrust and confusion surrounding the democratic process. This culminated in the events of January 6, 2021, when an attack on the United States Capitol aimed to disrupt the certification of the presidential election results.

66.   By engaging in insurrectionary conduct that undermined the peaceful transition of power and delegitimized the electoral process, the Defendants violated their oaths to support the Constitution and contravened the prohibition set forth in Article 14, Section 3. The intent of this clause is to safeguard the stability and integrity of the nation's governance, making it imperative for the court to recognize the Defendants' violation and declare them ineligible to hold any office, whether at the local, state, or federal level.

## A CONSTITUTIONAL BASIS EXISTS FOR DISQUALIFICATION WITHOUT CRIMINAL CONVICTION

67.   The disqualification of Donald J. Trump from appearing on election ballots doesn't solely rely on a criminal conviction. Section Three of the Fourteenth Amendment provides a robust foundation for disqualification without such a requirement. This constitutional provision establishes that anyone who has taken an oath to uphold the Constitution and subsequently engages in "insurrection or rebellion against the same" is barred from holding any federal office. Donald J. Trump's conduct leading up to and during the events of January 6, 2021, where he encouraged supporters to challenge the legitimacy of the 2020 election results and incited them to march on the Capitol, aligns precisely with the constitutional definition of "insurrection."

68.   Trump's actions, including attempting to pressure then-Vice President Mike Pence and Members of Congress to overturn valid election results, and his inflammatory rhetoric, squarely fall within the bounds of insurrection as defined by the Constitution. The

Fourteenth Amendment's standard for disqualification encompasses actions breaching the oath to uphold the Constitution and is not confined to criminal convictions.

69.   The argument now hinges on the constitutional definition of 'insurrection,' which encompasses rising against civil or political authority and open opposition to the execution of laws. The explicit wording of Section Three mandates the disqualification of individuals engaging in such insurrectionary conduct, irrespective of their intent to incite a full-scale rebellion. This aligns with legal scholars such as Steven Calabresi[2], Baude and Stokes Paulsen[3], and Tribe and Lessig[4], who assert that disqualification under Article 14, Section 3 is 'self-enforcing,' operating independently of criminal convictions.

70.   In this context, the necessity for Trump's conviction of a specific crime becomes secondary. The Constitution itself provides the framework for disqualification based on actions that breach the oath to support and defend the Constitution. This understanding concurs with the original intent of the Fourteenth Amendment's framers, who aimed to prevent those engaging in insurrectionary conduct from occupying federal office. The standard for disqualification, as defined by Article 14, Section 3, transcends criminal convictions and addresses actions directly contradicting the oath of office.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

---

2   Steven Calabresi, "Trump Is Disqualified from Being on Any Election Ballots," Reason Magazine, August 10, 2023.

3   William Baude and Michael Stokes Paulsen, "The Sweep and Force of Section Three," University of Pennsylvania Law Review (Forthcoming)

4   J. Michael Luttig and Laurence H. Tribe, "The Constitution Prohibits Trump From Ever Being President Again," The Atlantic, August 19, 2023.

71. Declare the Defendants ineligible to stand within the State of New York for any office, whether local, state, or federal, pursuant to Article 14, Section 3 of the United States Constitution;

72. Issue an injunction restraining and enjoining the Secretary of State of New York from approving any ballot or election materials that contain the names of the Defendants, in accordance with Article 14, Section 3 of the United States Constitution;

73. Order a declaratory judgment that the Defendants' engagement in insurrectionary activities, as demonstrated by their involvement in the Fake Electors Scheme and subsequent events, violates Article 14, Section 3 of the United States Constitution and renders them ineligible for public office in the State of New York;

74. Issue an injunction restraining and enjoining the NY SECRETARY OF STATE and Defendant Robert J. Rodriguez in his official capacity from certifying the names of Defendants, DONALD J. TRUMP, RUDY GIULIANI, MARK MEADOWS, SIDNEY POWELL, JOHN EASTMAN, KENNETH CHEELEY, JENNA ELLIS, RAY SMITH, JEFFREY CLARK, MICHAEL ROMAN, MISTY HAMPTON, ROBERT CHEELEY, SCOTT HALL, STEPHEN LEE, TREVIAN KUTTI, DAVID SHAFER, SHAWN STILL, and CATHY LATHAM to be placed on any ballot under his jurisdiction.

75. Impose any additional appropriate relief that this Court deems necessary to ensure the enforcement of Article 14, Section 3 of the United States Constitution and the preservation of the integrity of democratic processes;

76. Award Plaintiff reasonable attorney's fees and costs incurred in bringing this action, in accordance with applicable law;

77.  Grant such other and further relief as the Court deems just and proper.

78.  Plaintiff respectfully requests that this Court expedite the proceedings due to the importance of the issues presented and the impending electoral cycle. Plaintiff further prays for a fair and impartial trial, the protection of democratic principles, and the preservation of the rule of law.

Dated: September 5, 2023

Respectfully submitted,
Jerome~W Dewald, pro se
30 W. 63rd St #8V
New York, NY 10023
(212) 365-8451
Email: jerome@pro-se.pro